James E. MEADOWS, Appellant,

v.

The CHESAPEAKE & OHIO RAILWAY
COMPANY et al., Appellees.

Court of Appeals of Kentucky.

March 3, 1967.

Warren M. Briggs, Cleveland, Ohio, Eldon L. Webb, Ashland, for appellant.

Porter M. Gray, John M. Williams, Gray, Woods & Cooper, Ashland, Atkinson & Atkinson, Greenup, for appellees.

CLAY, Commissioner.

Plaintiff appellant, driving an automobile, was struck by defendant appellee's passenger train on a public railroad crossing. He survived, and in this suit for damages the trial court directed a verdict for defendant at the close of plaintiff's evidence. Assuming defendant was negligent in the operation of its train, our question is whether plaintiff was contributorily negligent as a matter of law.

The accident happened at 1:30 a. m. on a clear night. There were three tracks running east and west over the crossing. The highway runs north and south. Plaintiff approached from the south, and the train approached from the west on the south rails. Plaintiff thus described the accident in his brief:[1]

"Appellant stopped his automobile about ten or fifteen feet from the crossing and looked both ways for trains and listened for trains. The weather was clear, warm, and the moon was shining. The front left window of his automobile

---

1. We are impressed with the fairness, accuracy and excellence of the briefs prepared by appellant's counsel.

was partly down and the automobile was running smoothly. Appellant was listening, but saw nothing to indicate the approach of a train. Appellant was looking, but saw nothing to indicate that approach of a train. After having stopped a reasonably safe distance from the crossing and having looked and listened for the approach of trains, appellant started across the rough crossing at a speed of three or four miles an hour with his eyes on the road in front to avoid going off on either side of the crossing.

"Appellant proceeded in this fashion for five or six seconds to a point where the front portion of his automobile had cleared the southern track at which time he was struck by the company's passenger train proceeding east on the southern track."

The train was traveling 65 miles an hour. It had a light on it, although there is some conflict in the evidence as to the kind of light. As one approaches the crossing from the south, the view to the west is obstructed by a barn, a large tree and undergrowth bordering the right of way. However, from a point approximately 15 feet south of the southern rail there is an unobstructed view of the tracks (which curve to the north) for 1200 feet.

Plaintiff knew this crossing well. He lived close by and had traversed it daily for six weeks. He knew that a large number of trains passed every day.

Two of plaintiff's witnesses, who resided 400 feet north and 200 feet west of the crossing (the direction from which the train approached), testified that they heard and saw the train as it approached and passed their house. Plaintiff testified he did not see or hear the train until he was struck. He had never looked to right or left when he proceeded slowly after stopping 10 or 15 feet back from the crossing.

■ On this set of facts we must determine if the circuit court erroneously concluded that reasonable minds could not differ on the issue of whether plaintiff exercised reasonable care for his own safety. It must be conceded that, whether or not this crossing may be described as "extrahazardous", the view of a highway traveler going north was substantially obstructed until he was within 10 or 15 feet of the crossing. However, plaintiff knew this, and he also knew that this crossing daily carried heavy train traffic. Known hazards exact greater care on the part of the traveler than those which are unknown. Louisville and Nashville Railroad Co. v. Fisher, Ky., 357 S.W.2d 683; Hargadon v. Louisville and Nashville Railroad Co., Ky., 375 S.W.2d 834.

We are unable to comprehend how this accident could have happened if plaintiff took the precautions he said he did. Had he stopped, looked and listened as he testified, one wonders why he did not see and hear this train. Assuming he could not see or hear it at the point he stopped, he completely abandoned precautions as he slowly approached the crossing.

■ The pertinent factors and controlling principles which govern a case of this sort have been carefully considered in the recent cases of Louisville & Nashville Railroad Company v. Hines, Ky., 302 S.W.2d 553; Louisville and Nashville Railroad Co. v. Fisher, Ky., 357 S.W.2d 683; Hargadon v. Louisville and Nashville Railroad Co., Ky., 375 S.W.2d 834; Louisville & Nashville Railroad Company v. Dunn, Ky., 380 S.W.2d 241. It would serve no useful purpose to restate the standard of care required of a motorist at a railroad crossing, or to emphasize his duty to take reasonable precautions to see and hear the approach of a train before he commits himself to a position of peril. With knowledge of the physical characteristics of this crossing, plaintiff's own testimony shows that he blinded himself, at a critical time, to a hazard he could anticipate and observe. The preliminary care he said he exercised accomplished no purpose and did not relieve him of the duty of continuing

care when it would count. This is especially true while traveling at an extremely slow rate of speed (according to his testimony) as he approached the immediate vicinity of the crossing. See Cincinnati, New Orleans & Texas Pacific Railway Co. v. Ferguson, Ky., 385 S.W.2d 947. We cannot find that the lack of care shown constituted reasonable prudence under the circumstances. We do not believe reasonable men could conclude otherwise, and a verdict was properly directed for the defendant.

■ It is unnecessary for us to pass upon plaintiff's contention that the defendant was negligent since we have assumed it. As we pointed out in Louisville & Nashville Railroad Company v. Dunn, Ky., 380 S.W.2d 241, the breach of duty by the railroad does not extinguish the motorist's obligation to exercise due care.

The judgment is affirmed.

All concur.